**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



_____
Mary Ann Whipple
United States Bankruptcy Judge

**Dated:  October 29 2019**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.   19-32357 |
| | ) | |
| Althaus Family Investors Ltd., | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor-in-Possession. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

## <u>MEMORANDUM OF DECISION AND ORDER REGARDING MOTIONS TO DISMISS</u>

The case is before the court for decision after an evidentiary hearing on a motion to dismiss filed by Waterford Bank, N.A. ("Waterford" or "Movant") [Doc. # 26] and Debtor's objection to the motion [Doc. # 31].

Debtor Althaus Family Investors Ltd. ("Debtor" or "AFI") voluntarily commenced this Chapter 11 case on July 26, 2019.  Movant brings its motion seeking dismissal "for cause" under 11 U.S.C. § 1112(b)(1) based on Debtor's alleged bad faith commencement of this case. It is related to the separate Chapter 11 case of Unique Tool & Manufacturing, Inc. ("Unique"), Case No. 19-32356 pending in this court.   The Unique Chapter 11 case was filed on the same day as this one.   As Movant describes it, the "businesses of Debtor and Unique are inextricably intertwined."   [Doc. # 26, p. 6/108].  Movant also filed a motion to dismiss the Unique case, as did Chemical Bank, now a division of TCF National Bank sbmt Chemical Bank ("Chemical").   At the hearing the parties agreed to develop one record on all three motions to dismiss. The court denied Waterford's and Chemical's motions to dismiss the Unique case by

order entered therein on October 25, 2019.

## FACTUAL BACKGROUND

Unique is an Ohio entity founded in 1963 by Harold Althaus. [Unique Movants Ex. 5, p.2]. It is a family business currently owned and managed by Harold's sons Daniel, David and Douglas, [*Id.*], as it was when Chemical Bank's predecessor, Bank of Holland, and Waterford entered into lending relationships with the company. Unique operates as a custom metal stamper supplying parts to the electrical, appliance, refrigeration, automotive, satellite, and communications industries from a modern, leased 118,000 square foot facility located in Temperance, Michigan. AFI, which is also an Ohio limited liability company, owns the real estate upon which Unique operates its business. [*Id.*]. Unique's operations involve, and it owns, a substantial amount of machinery and equipment, some of it large and heavy and not readily moveable.

One of Unique's primary customers is Tecumseh Products, Inc. ("Tecumseh"). In reliance on Tecumseh's announced intention to source significant additional business to Unique, Unique and AFI invested heavily in 2013 on a business expansion to acquire the equipment and the additional real property and construct the building space necessary to supply Tecumseh Products. The secured loans at issue now financed that expansion. While Tecumseh Products remains an important customer of Unique, by 2016 "it was not the same business partner as it had been in earlier years." [Unique Movants Ex. 5, p. 4]. Unique never received all the new business from Tecumseh, in which it invested approximately $4 million borrowed from Waterford and Chemical's predecessor. Unique and AFI have still not recovered from that business shock. Unique was left with too much debt, too much space and equipment, not enough business and cash flow problems, all issues that have impacted its borrowing relationships with its lenders. Suffice to say that Unique, AFI, Waterford and Chemical all worked more or less together over time to overcome them. But systemic financial management insufficiencies that Unique could withstand as a smaller business became more acute in the pinch, breeding many of the conflicts on full display at the hearing.

Waterford refinanced existing debt and extended Unique a line of credit in March 2013 pursuant to a "term" note in the original principal amount of $1.6 million secured by all of Debtor's personal property. [Unique Movants Ex. 4]. No dispute has been raised that Waterford's security interest is perfected and the first and best lien on all Unique's personal property, with the exception of certain equipment acquired with a Small Business Administration loan from Chemical's predecessor.

Over the years, the loan maturity on the Waterford term loan was extended by agreement of the

parties 17 times, the most recent and final extension maturing on June 30, 2019. The maximum extension of credit under the note increased and decreased over that time, as did the interest rate, but the loan covenants generally remained the same. Unique consistently maintained timely monthly payments due on the term note as extended on various occasions through the final maturity date and was not in payment default through commencement of the Chapter 11 case.

But Unique was in extended default of various non-monetary terms and covenants of the loan and out-of-formula on the line of credit. Waterford commissioned a field examination report of its Unique collateral by a company called Lender Solutions, Inc. in June 2016. [Unique Movants Ex. 5]. The examiners noted that they "received very good cooperation from the staff and owners of Unique during this review." [*Id.*, p.2].   The report confirmed the concerns of both Waterford and Chemical that "during 2015, Unique had been crediting and rebilling invoices and in 2016 had been prebilling sales by an average of 30 days." [*Id.*]. It also acknowledged the substantial out of formula status of various borrowing certificates and the lack of appropriate accounting and financial reporting capabilities and systems for a company its size. Its "Overall Conclusions" noted that Unique had many strengths, including that "[a]ll Bank term debt loan payments, inclusive of a real estate mortgage, have been paid timely and are in good standing," the company's excellent reputation in the stamping industry, and the excellent condition of the plant and equipment. [*Id.* at numbered p. 18]. The report also noted that Unique had a number of weaknesses, including a substantial collateral shortfall, the prebilling of sales and rebilling of invoices, and that "Tecumseh Products has not lived up to its P.O. commitments." The report also made a list of recommendations to address these weaknesses, many of which did not come to pass.

Waterford delivered written notices of default to Unique in August 2017, and again on April 25, 2019. [Unique Movants Ex. 9]. Waterford thus communicated to Unique starting in 2017, that it wanted out of the relationship and prodded Unique to repay it and move on to another lender. [*Id.*, p. 4/4]. Waterford declined to extend the term loan an 18th time past the June 30, 2019, maturity date and instead filed suit against Unique in the Monroe County, Michigan Circuit Court, on July 3, 2019, seeking foreclosure of its security interests, collection of the debt and appointment of a receiver.

As of the commencement of this Chapter 11 case, Unique owed Waterford approximately $1.8 million in principal and interest on the term loan.

Waterford also extended loans to AFI.

In March 2013, Waterford loaned AFI $1.3 million to refinance mortgage debt encumbering its

real property pursuant to a term note. The AFI term note is secured by a first mortgage on the real property at which Unique operates and was also guaranteed by Unique and the Althaus brothers. Starting in 2017, the maturity date of that note was extended a number of times, most recently by an Eighth Amended and Restated Term Note dated April 15, 2019, in the principal amount of $1,047,485.00. That note matured according to its terms on June 30, 2019, [AFIM Ex. 1], with approximately $1,041,378 plus interest due at that time.

In November 2013, Waterford loaned AFI $2,932,937.00 to buy more real property and to construct a building addition thereon. [AFIM Ex. 3]. Chemical also has a participation interest in this loan. As of June 30, 2019, the principal amount of approximately $2,558,477 plus interest was due on the construction note, which matured according to its terms post-petition on September 30, 2019. The AFI construction note is secured by the second mortgage on the real property where Debtor operates and was also guaranteed by Unique and the Althaus brothers. There are cross-default provisions connecting all of the loans.

As of the commencement of this case, AFI owed Waterford approximately $3.6 million in principal and interest on the term and construction loans.

At the commencement of this case, Unique and AFI together owed Waterford approximately $5.4 million in principal and interest on the three loans.

A predecessor of Chemical loaned Unique the principal sum of $2,386,500.00 pursuant to a United States Small Business Administration note dated November 22, 2013, and as its terms were later modified by the parties. [Unique Movants' Ex. 17, Ex. 2]. Waterford also has a participation interest in this loan. The purpose of the loan was to acquire specific equipment for the Tecumseh expansion. By its terms, the loan matures in December 2020. [Unique Movants' Ex. 17, Ex. 2 p.18/86; Ex 6, p. 62/86]. The Althaus brothers and AFI unconditionally guaranteed the indebtedness. Chemical is the current holder of the note. There does not presently appear to be any dispute that Chemical has a properly perfected first lien in the specific equipment financed, as well as a second lien, behind Waterford, in all other personal property of Unique.

By May of 2018, there were acknowledged non-monetary defaults in the Chemical loan, resulting in the parties' execution of a Forbearance Agreement dated May 22, 2018. [Unique Movants Ex. 17, Ex.6]. As of May 4, 2018, the original indebtedness under the SBA note had been reduced to a principal balance of $1,198,223.65. [Unique Movants Ex. 17, Ex. 6, p. 64/86]. With the consent of Chemical, an auction of

some of its equipment collateral occurred in 2018, with the proceeds paid over to it. Unique also made the monthly payments on the Chemical SBA loan as agreed. Between the monthly payments and the auction proceeds, as of the commencement of this case Unique had paid the Chemical SBA loan down to a principal balance of approximately $492,299.

Unique leases the real property at which it conducts its business from AFI. Starting in 2018, Unique subleased part of the AFI mortgaged premises and some equipment (specifically a 1,400 ton capacity press and related equipment) to an Ohio company called Toledo Tool & Die, Inc. ("Toledo Tool"). [*See* AFIM Ex. 6]. Toledo Tool wears several hats in this proceeding. With Waterford's consent, Unique subleases to Toledo Tool part of the AFI premises. With Chemical's consent, [Unique Movants Ex. 17, Ex. 6, p. 63-64/86], Unique also leases to Toledo Tool at those premises certain equipment (1,400 ton press and related equipment) on which Chemical has the first and best lien. But Toledo Tool has been a customer of Unique and a competitor to Unique. It is also a customer of Waterford, although serviced by a different loan officer than Unique. Leading up to the commencement of this Chapter 11 case, Toledo Tool made an offer to Unique and AFI to buy their assets for $6 million, with $5.5 million of that to be paid to the banks and the balance to be held back to fund in part 4 years of consulting services by the Althaus brothers, an offer Waterford calls a "good faith offer" but also one which would not appear to be enough to pay off the banks in full, an AFI real estate tax deficiency of $65,000, or any unsecured creditors. [Unique Debtor Ex. C]. The preliminary offer letter contemplated that Unique would work with the banks to "take a haircut." [*Id.*].

The monthly sublease rent of $19,367 Toledo Tool owes to Unique is assigned and paid directly to Waterford. The monthly equipment lease rent of $16,000 Toledo Tool owes to Unique is assigned and paid directly to Chemical. Those payments have continued post-petition, with Waterford electing to apply the real estate lease payments to the Unique term loan obligations. According to Doug Althaus' testimony, however, while current in the base rent payments assigned and paid directly to Waterford and Chemical, Toledo Tool is behind on its share of CAM charges to Unique since June 2019. As a result, Unique is shouldering the post-petition burden for all of the utilities at the property, not just those for its own operations. While AFI acknowledges that it owes delinquent county real estate taxes on the property of approximately $65,000, neither Unique nor AFI have been paying over to the county any amounts previously paid by Toledo Tool to Unique on account of a pro rata share of those taxes. Monroe County has commenced tax foreclosure proceedings on the AFI real property, which are set for further proceedings

in 2020. [Doc. # 26, Ex. 6].

AFI is also a defendant in Waterford's lawsuit in the Monroe County, Michigan Circuit Court, in which it also seeks to foreclose on its mortgages on the AFI property, to collect the AFI debt and to have a receiver appointed with respect to the mortgaged premises. Debtor's (and Unique's) Chapter 11 bankruptcy petition was filed on July 26, 2019, the same day upon which Waterford's motion to appoint a receiver was scheduled to be heard by the Monroe County, Michigan Circuit Court.

## LAW AND ANALYSIS

Waterford seeks dismissal of this case for cause under 11 U.S.C. § 1112(b).

Section 1112(b) provides in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause* unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added). Waterford asserts that Debtor commenced this case in bad faith as cause for dismissal. "Bad faith" as cause for dismissal under § 1112(b)(1) is rooted in case law from the Sixth Circuit Court of Appeals, which has "consistently held that a debtor's Chapter 11 petition may be dismissed if it was filed in bad faith." *Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. P'ship )*, 52 F.3d 127, 130 (6th Cir. 1995).

A determination of cause for dismissal under § 1112(b) requires "a 'case-specific' factual inquiry which 'focuses on the circumstances of each debtor.'" *In re Creekside Senior Apartments., L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013) (quoting *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 371–72 (5th Cir.1987)). The party seeking dismissal carries the burden of proving that cause exists by a preponderance of the evidence. *Id.*

"A debtor's bad faith at any stage of a Chapter 11 case – 'commencement, during its prosecution, or at confirmation' – is cause for dismissal under § 1112(b)." *In re Four Wells Ltd.,* No. 15-8020, 2016 WL 1445393, *11, 2016 Bankr. LEXIS 1673, *31 (B.A.P. 6th Cir. April 12, 2016) (quoting *In re Alder* 329 B.R. 406, 410 (Bankr. S.D.N.Y. 2005)). In this case, Waterford argues that Debtor acted in bad faith in filing its Chapter 11 petition in the first instance. The court disagrees.

A determination as to whether a debtor has acted in bad faith is a "'fact-specific and flexible

determination' that must be made on a case-by-case basis by looking to a totality of the circumstances." *In re Lee*, 467 B.R. 906, 917 (B.A.P. 6th Cir. 2012) (quoting *Alt v. United States (In re Alt)*, 305 F.3d 413, 419 (6th Cir. 2002)). While there is no single test for determining good faith, the Sixth Circuit has set forth eight factors, none of which are dispositive, that may be probative in evaluating an organizational debtor's good faith:

(1) the debtor has one asset;

(2) the pre-petition conduct of the debtor has been improper;

(3) there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(6) the filing of the petition effectively allows the debtor to evade court orders;

(7) the debtor has no ongoing business or employees; and

(8) the lack of possibility of reorganization.

*Trident Assocs. Ltd. P'ship,* 52 F.3d at 131 (quoting *Laguna Assocs. Ltd. P'ship v. Aetna Casualty & Surety Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 738 6th Cir. 1994)).

These factors are not exhaustive and "cannot simply be mechanically tallied." *In re Four Wells Ltd.*, 2016 WL 1445393 at *14. Rather, the court "must look at the factors together and determine whether the petitioner sought to achieve objectives outside the legitimate scope of the bankruptcy laws when filing for protection under Chapter 11." *Id.* (citations omitted); *see Crown Village, LLC v. Arl, LLC (In re Crown Village Farm, LLC)*, 415 B.R. 86, 92 (Bankr. D. Del. 2009) ("Once these pieces of factual information are ascertained, courts must next apply them when considering: '(1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving the going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage.'"; citations omitted); *In re Webb MTN, LLC*, No. 3:07-CV-437. 2008 U.S. Dist. LEXIS 10030, 2008 WL 361402 at *3 (E.D. Tenn. Feb. 8, 2008) (despite the presence of a majority of the *Trident* factors, Chapter 11 case not filed in bad faith).

The first *Trident* factor is whether debtor has only one asset. This factor "has been characterized as 'new debtor syndrome' and includes single-asset debtors created or revitalized on the eve of foreclosure

to isolate the insolvent property and its creditors." *MRL Residential Leasing, Inc. v. Investaid Corp. (In re MRL Residential Leasing, Inc.)*, 121 F3d 709 (Table), 1997 WL 453163, *4, 1997 U.S. App. LEXIS 21525, *12 (6th Cir. Aug. 8, 1997). Debtor's Schedules A/B show that it does own some miscellaneous personal property, scheduled with a book value of $213,426 but with the current value of AFI's interest listed as unknown, [Doc. # 24, p. 5/23], and two financial accounts with small amounts in them at filing [*Id*., at pp. 3-4/23]. Clearly, the real estate and building at which Unique conducts its business are AFI's primary assets and its source of income. But AFI was not created on the eve of foreclosure and has no characteristics of the "new debtor syndrome," facts that were central to the Sixth Circuit's dismissal analysis in both *Trident Assocs. Ltd. P'ship* and *Laguna Assocs. Ltd. P'ship*. The Bankruptcy Code specifically contemplates "single asset real estate" cases being filed, *see* 11 U.S.C. §§ 101(51B) and 363(d)(3), and does not contemplate dismissal simply because a case meets that definition. Moreover, the business and financial structure of the tenant upon which Debtor depends for its income are closely intertwined with it, with Waterford applying the rents it receives directly on account of tenant Unique's sublease to Toledo Tool to Unique's loan obligations. And that tenant had at filing employees, significant personal property, customers that buy its products and an ongoing business operation. As Waterford acknowledges, the businesses are inextricably intertwined. The court finds that this factor and the seventh factor (whether debtor has an ongoing business or employees) do not weigh in favor of dismissal based on the facts and circumstances in this case as intertwined with the Unique case.

Waterford relies most heavily on the second *Trident* factor, arguing that improper pre-petition conduct of AFI justifies dismissal of this case. The pre-petition conduct that it characterizes as problematic is the commencement of this Chapter 11 case on the same day as the receivership motion in the state court was set for hearing, thus stopping the pending foreclosure action and preventing a hearing on appointment of a receiver. [Doc. # 26, p. 9/108]. The court does not find the timing of commencement of this case to be pre-petition "misconduct" abusive of the provisions and purpose of the Bankruptcy Code. This case is not a serial filing. Timing of the commencement of a bankruptcy case in relation to ongoing *in rem* and *in personam* collection actions in other fora are, however, separate specific factors the Sixth Circuit suggested for consideration in *Trident* and will be addressed below.

The third *Trident* factor is whether Debtor has only a few unsecured creditors. Debtor schedules only three unsecured creditors of AFI: Chemical, the Michigan Strategic Fund and Toledo Tool, all as holding contingent, unliquidated and disputed claims. [Doc. # 24, p/10/23]. However, Unique has

scheduled 97 non-priority unsecured creditors and there is an unsecured creditors' committee that has been formed int hat case. Given the acknowledged intertwinement of the two businesses, this factor does not weigh in favor of dismissal in this case.

The fourth *Trident* factor of whether the Debtor's property has been posted for foreclosure and the Debtor has been unsuccessful in defending against that foreclosure also does not weigh in favor of dismissal on bad faith grounds. Waterford commenced its state court collection action seeking foreclosure of its collateral liens and appointment of a receiver approximately a month earlier. Describing it as misconduct, Waterford makes much of the fact that Debtor commenced this case within hours of the receivership hearing being held in state court. The court fails to see how that timing is indicative of bad faith in this case. That Debtor believes that it can better maximize value and return to all creditors in this and the Unique case, in a collective proceeding in this court without a receiver picked out by a secured lender, is a valid purpose for commencing a Chapter 11 case. This is not the more exacerbated and problematic timing where a debtor has bided its time until the last minute <u>after</u> state or other court process had already played itself out to or nearly to the end, or a receiver has already been in place for an extended period of time, which is what this factor is intended to address. Commencing this Chapter 11 case in order to preserve the going concern or maximize the value of the Debtor's estate serves a valid bankruptcy purpose, *Crown Village, LLC*, 415 B.R. at 92, even though filed on the eve of a foreclosure sale, *In re Four Wells Ltd*, 2016 WL 1445393 at *14 (quoting 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1112.07 (16th ed. 2016) and stating that "the bare fact that the debtor desires to obtain the benefits of the automatic stay cannot by itself support a finding of bad faith. [D]ebtor must intend to obtain the benefit . . . for an improper purpose. . . ."). The court finds that it was not unreasonable for AFI to seek a different forum and different procedures to promote maximization of value of the real estate, particularly one that provides for assumption and rejection of leases, while still protecting the interests of all parties. As a result of the timing of the instant case filing, *Trident* factors (5) and (6) are not relevant in this case. Related factors (4) through (6) do not collectively weigh in favor of dismissal.

According to Waterford with respect to the eighth *Trident* factor, there is no possibility of Debtor's reorganization because of the long- term weakness of Unique's business operations upon which AFI is also dependent. That weakness carries over to this case and is manifested in AFI's non-payment of its real estate taxes since 2017 and a near brush with cancellation of insurance on the property.

In the context of a determination as to whether AFI filed its bankruptcy petition in bad faith,

10

which is what Movants argue, the inquiry must be whether, *at the time of filing*, there was no *possibility* of reorganization. *In re Lady Bug Corporation,* 500 B.R. 556, 564 (Bankr. E.D. Tenn. 2013) (bankruptcy court's determination that the property debtor relied on to reorganize was not property of the estate and that debtor thus had nothing to reorganize did not make the case a bad faith filing where debtor had reason to believe otherwise *at filing*). The court cannot make such a finding in this case.

Unique's cash flow and business operations were clearly struggling at filing. They have been for a long time. But there are substantial combined equipment and real estate values between the two debtors, with one "good faith" offer by a competitor having been made before the case was filed, that shows there were options for reorganization at the time of filing. Those values at filing as scheduled by Debtor, which show that Waterford and Chemical are oversecured, have not been challenged thus far. From that perspective it cannot be said that there was no prospect of reorganization of this Debtor at the time of filing, either on its own or when considered in light of the prospects of its tenant and co-debtor Unique, that made the very commencement of this case an act of bad faith toward the bankruptcy process and Waterford. The court finds that this factor also does not weigh in favor of dismissal.

Overall, in considering the totality of the circumstances at filing, and weighing the *Trident* factors with none of them supporting dismissal at this time, the court cannot find that Debtor filed this case to perpetuate pre-petition misdeeds and mistakes or without any valid purpose or prospect under Chapter 11 of the Bankruptcy Code to repay creditors, both secured and unsecured. Movant has not sustained its burden of proving that this case was filed in bad faith for a purpose outside the legitimate scope of the Bankruptcy Code as "cause" for dismissal under § 1112(b)(1).

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the motion to dismiss filed by Waterford Bank, N.A. [Doc. # 26] is **DENIED,** without prejudice.

10